UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE A. RODRIGUEZ, | § | |
| | § | |
| **Plaintiff**, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-cv-1838-B |
| | § | |
| OFFICER NFN PENA, | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to the district court's order of reference dated January 11, 2010 (Doc. # 32) came on to be considered Defendant's motion for summary judgment filed on December 21, 2009. (Docs. # 29-31). Also pending before the district court is Plaintiff's motion for summary judgment filed on February 18, 2010. (Doc. # 36). Having considered the relevant pleadings, and for the reasons discussed below, the court finds and recommends as follows:

*Procedural History:*

Plaintiff Joe Rodriguez filed his complaint on October 15, 2008. (Doc. # 1). Officer Pena filed his answer on December 17, 2008. (Doc. # 11). Officer Pena filed his motion for summary judgment on December 21, 2009. (Docs. # 29-31). Plaintiff did not timely file a response. The dispositive motions deadline was January 15, 2010, per the October 8, 2009 scheduling order. (Doc. # 28). On February 8, 2010, Plaintiff was granted an extension of 14 days to respond to Defendant's motion for summary judgment. (Doc. # 35). Plaintiff did not file a response to Defendant's motion; however, on February 18, 2010, Plaintiff filed his own motion

for summary judgment.  (Doc. # 36).

*Factual Background:*

On May 20, 2008, Plaintiff Rodriguez was arrested by Officer Pena, of the Dallas County Sheriff's Office.  (Doc. # 1, Plaintiff's complaint, hereinafter "Pl. Compl." at page 4).  Rodriguez alleged, to wit: "[Pena] approach [sic] me with his gun asking me to turn around and put my hands behind my back.  As I turn [sic] around and put my hands behind my back, officer then strikes me from my back, causing me to fall on ground; puts handcuffs on me [and continues] hitting me on back of head [and] bouncing my head on the ground, causing bodily injury to my face, knees, forearm and palm of right hand."  *Id*.  Rodriguez attached four pages of photographs, containing eight photos total, illustrating the injuries he allegedly sustained in the incident.  (Pl. Compl., p. 7-10).  Rodriguez requested relief, to wit: "legal representation [and] get paid for my mental damages and physical damages."  (Pl. Compl., p. 4).

Defendant stated that Rodriguez has an extensive criminal history, including property crimes, theft, and attempted murder, which have led to his arrest approximately thirteen times since 2003.  (Doc. # 31, Defendant's summary judgment appendix, hereinafter "Def. App.", at pages 2, 5).  After the incident at issue in this case, Rodriguez was confined in jail from May 20, 2008 through June 23, 2008, and again from August 28, 2008 through October 2, 2008.  *Id*.  On May 20, 2008, Rodriguez had an outstanding warrant related to two pending felony cases, one for criminal mischief greater than $20,000 and the other for burglary of a building.  (Def. App. 2).

Officers Rocky Pena and Jackie Turner, acting on a tip they received, arrived at a car shop in the Oak Cliff neighborhood in full uniform in search of Rodriguez.  *Id*.  The Defendant

2

and his brother fled in a white pickup truck upon seeing the officers. *Id*. The officers proceeded to a local address listed as a possible residence for Rodriguez, where they once again located him. (Def. App. 3). Rodriguez ran down the street, with Officer Pena in pursuit. Pena ordered Rodriguez to stop, Rodriguez stopped suddenly, both the Plaintiff and Defendant fell to the ground, and Pena handcuffed Rodriguez. *Id*. On July 7, 2008, Rodriguez filed an Internal Affairs complaint against Pena. *Id*. Internal Affairs later found his complaint to be unfounded, concluding that "Pena did not use excessive force while arresting Mr. Rodriguez", and that "Pena took all precautionary measures to prevent injury to himself, others, and to effect the arrest." (Def. App. 3, 24-25). Rodriguez also filed a complaint with the jail, and on September 17, 2008, the Grievance Committee determined the incident was "not a jail issue." (Doc. # 1, p. 11).

*Summary Judgment Standard*:

A party may move for summary judgment in the party's favor at any time. Fed. R. Civ. P. 56(b). To prevail on a motion for summary judgment, the moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). The materiality of facts is determined by substantive law. *Anderson*, 477 U.S. at 248. An issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). If the moving party presents evidence tending to show the absence of any genuine issue of fact, the opposing party must then identify specific evidence in the record which establishes the existence

3

of one or more issues of fact, i.e. a non-movant may not merely rely on his or her pleadings.  *See Anderson*, 477 U.S. at 256-57; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When a defendant invokes qualified immunity, the burden shifts to the plaintiff to rebut the applicability of the defense.  *See McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002) (en banc). In analyzing the competent evidence proffered by the parties, the facts and the inferences to be drawn are viewed in the light most favorable to the non-movants.  *See Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 97 (5th Cir. 1993); *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989).  Plaintiff has not responded to Defendant's motion for summary judgment.  While his failure to respond does not permit the entry of a "default" summary judgment, the court has the authority to accept Defendants' evidence as undisputed.  *See Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).[1]

After being granted an extension of 14 days to file a response to Defendant's motion for summary judgment, Plaintiff submitted his own motion for summary judgment; however, he did not file a response to Defendant's motion for summary judgment.  Plaintiff's motion seeks summary judgment in his favor and restates his request for appointment of counsel; however, it does not mention Defendant's motion for summary judgment, nor does it make an attempt to respond to that motion.  Plaintiff's motion added no new facts, and it did not further develop any of the facts previously set forth in the pleadings.

---

[1]   Since Plaintiff has not responded to the motion for summary judgment, the court need not consider Plaintiff's answers to the magistrate judge's questionnaire in deciding the motion.  *Bookman v. Shubzda*, 945 F.Supp. 999, 1004-05 (N.D. Tex. 1996).

*Findings and Recommendation*:

The court concludes that Defendant Pena is entitled to summary judgment on the basis of his qualified immunity defense. The doctrine of qualified immunity shields state officials from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McClendon*, 305 F.3d at 322 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)).

To determine whether an official is entitled to qualified immunity from a suit alleging a constitutional violation, the court conducts a familiar two-step inquiry: First, the court determines whether plaintiff's allegations allege facts to establish that the official violated the plaintiff's constitutional rights. *Hope v. Pelzer,* 536 U.S. 730, 736, 122 S. Ct. 2508, 2513 (2002). Whether the facts establish a violation of a constitutional right is determined with reference to current law. *See Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 253 (5th Cir. 2005); *McClendon,* 305 F.3d at 323. If the facts do not establish that the defendant violated the plaintiff's constitutional rights, the court need not inquire further. *See Saucier v. Katz*, 533 U.S. 194 at 201, 121 S. Ct. 2151 at 2156 (2001); see also *See Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808 at 816-818, 172 L.Ed.2d 565 (Jan. 21, 2009). If the facts do establish that the defendant violated the plaintiff's constitutional rights, the defendant is still entitled to qualified immunity unless the court finds that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the state action at issue. *See McClendon,* 305 F.3d at 323.

Relative to the first inquiry, "the use of excessive force to apprehend a subject implicates

the Fourth Amendment's guarantee against unreasonable seizures." *Colston v. Barnhart,* 130 F.3d 96, 99 (5th Cir. 1997).  To prevail on a Fourth Amendment excessive force claim, Rodriguez must show "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Hill v. Carroll County, Miss.*, 587 F.3d 230, 234 (5th Cir. 2009), *citing Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999).  Whether force was unreasonable is determined using a case-specific balancing test which considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest ..." *Hill*, 587 F.3d at 234, *citing Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  The officer's subjective motivation and intent are irrelevant for Fourth Amendment purposes- only the objective reasonableness of force matters.  *Id*.

Viewing  all facts in the light most favorable to Rodriguez, Officer Pena's use of force in restraining the Plaintiff did not result in more than minor, transient bodily injury and was not objectively unreasonable.  Rodriguez's injuries occurred following his second attempt to flee from Officer Pena, who was attempting to execute an outstanding warrant for Rodriguez's arrest. (Def. App. 164-166).  While Pena was pursuing Rodriguez on foot, Rodriguez suddenly stopped, and either spun around and held his hands up in the air, or placed his hands behind his back- in either event, Officer Pena grabbed Rodriguez and both men fell to the ground, with Rodriguez landing face-down in the street and Pena on top of him.  (Def. App. 33, 166).

Rodriguez alleged that Pena continued striking him in the back of the head and bouncing his head on the ground after they fell, while Pena stated that he had difficulty restraining and handcuffing Rodriguez due to continued resistance.  (Def. App. 33).  Pena stated that he put his

knee on the back of Rodriguez' neck and told him to give the officer his hands, which Pena refused to do, and that he was subsequently able to "grab Rodriguez's left hand and put him in a wrist lock", then waited for his partner to arrive to finish cuffing Rodriguez.  (Def. App. 166). Rodriguez sustained injuries to his face, knees, forearm, and the palm of his right hand during the incident, (Def. App. 33), which lasted less than two minutes in its entirety, from the time of Rodriguez's flight from Pena to the time he was restrained and handcuffed.  (Def. App. 166).

Rodriguez has presented no evidence that he suffered more than minor injuries.  The evidence presented by Defendant, which Rodriguez has failed to respond to, indicated that Rodriguez's injuries were minor and healed during his stay in jail.  (*See, e.g.*, Def. App. 57, 78). Moreover, the medical evidence indicated that the majority of Rodriguez's medical complaints related to a cyst he had removed from his chest while confined in the Dallas County jail, not the injuries sustained during his arrest.  *(Id.* at 61-66; 79; 91; 98; 117; 134).  Minor injuries that are "inherently transient" are only *de minimis* and are not actionable.  *Montes v. Ransom*, 219 Fed.Appx. 378, 380 (5th Cir. 2007) (citations omitted).

Even if Rodriguez sustained an actionable injury, he would still bear the burden of proving that Pena, who is entitled to qualified immunity as a public official acting within the scope of his official duties, used force that was "clearly excessive" to the need and was "objectively unreasonable".  *See Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir. 1999).  The force used by officer Pena in this case was neither clearly excessive nor objectively unreasonable.  *See Hill, supra*, 587 F.3d at 234.

Pena's partner, Jackie Turner, on the scene at the time of the incident, did not believe Pena's force to be excessive.  (Def. App. 169).  After injuring himself by stepping on a board

7

with nails in it, Turner limped towards his partner Officer Pena, and witnessed Pena pinning Rodriguez to the ground as Rodriguez continued to struggle against being handcuffed. *Id.* An Internal Affairs investigation found Rodriguez's accusations to be unfounded. (Def. App. 25). The Chief Deputy for the Detention Bureau in the Dallas County Jail, Gary Lindsey, concurred with the conclusion of internal affairs and stated that Rodriguez's injuries were consistent with the level of force that Pena used, to wit: "[t]hese injuries are consistent with falling, face down, on a hard road surface." (Def. App. 3-4). Rodriguez has failed to present any evidence to indicate that the force used by Pena in apprehending him was either clearly excessive or objectively unreasonable.

Defendant's motion for summary judgment should be granted. Plaintiff's motion for summary judgment has not been referred to the magistrate judge as of this date; however, based on the foregoing findings and construing Plaintiff's motion as a response to the magistrate judge's order of February 8, 2010 (Doc. # 35), it is recommended that Plaintiff's motion be denied.

**RECOMMENDATION:**

For the foregoing reasons it is recommended that **Defendant's** motion for summary judgment be **GRANTED** and that **Plaintiff's** motion for summary judgment be **DENIED**.

Signed this 25th day of February, 2010.

_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

A copy of this report and recommendation shall be served on all parties in the manner

8

provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

9